Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Johanna López Fantauzzi, et al.<br><br>Peticionarios<br><br>v.<br><br>100% Natural, et al.<br><br>Recurridos | Certiorari<br><br>2011 TSPR 40<br><br>181 DPR _____ |

Número del Caso: CC - 2009 - 692

Fecha: 16 de marzo de 2011

Tribunal de Apelaciones:

Región Judicial de Aguadilla Panel, IX

Juez Ponente:

Hon. Ismael Colón Birriel

Abogado de la Parte Peticionaria:

Lcdo. Israel Roldán González

Abogado s de la Parte Recurrida:

Lcda. Norana Sánchez Alvarado
Lcdo. Juan R. Mari Pesquera

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Johanna López Fantauzzi, et
al.
Peticionarios

v.

100% Natural, et al.
Recurridos

Certiorari

CC-2009-692

Opinión del Tribunal emitida por el Juez Asociado Señor Rivera García.

En San Juan, Puerto Rico, a 16 de marzo de 2011.

El presente recurso de *certiorari* requiere resolver si, al una empleada ser contratada por varios términos de empleo temporero vencederos cada 30 días, un patrono discrimina contra ella al no renovarle su último contrato laboral mientras se encuentra en estado de embarazo, a pesar del patrono desconocer tal condición. Concretamente, nos toca solucionar dos controversias medulares, a saber: (1) si el contrato laboral por término fijo pactado con la peticionaria constituye un contrato temporero *bona fide*, según lo dispone la Sec. 185k(a) de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, conocida como Ley Contra el Despido Injustificado (29 L.P.R.A. secs. 185a-

185m), el cual representa una excepción a la presunción de despido injustificadodispuesta por la Sec. 185a de dicha Ley; y (2) si el acto de no renovar el contrato temporero de la empleada configura una causa de acción por discrimen por razón de embarazo al amparo de los postulados de la Ley Núm. 3 de 13 de marzo de 1942, según enmendada, conocida como Ley de Protección de Madres Obreras (29 L.P.R.A. secs. 467-474); la Ley Núm. 100 de 30 de junio de 1959, según enmendada, conocida como Ley Contra el Discrimen en el Empleo (29 L.P.R.A. sec. 146-151), y la Ley Núm. 69 de 6 de julio de 1985, según enmendada, conocida como Ley Contra el Discrimen en el Empleo por Razón de Sexo (29 L.P.R.A. secs. 1321-1341).

Por entender que el contrato laboral pactado con la peticionaria era uno temporero *bona fide* el cual representa una excepción a la presunción de despido injustificado dispuesta por la Sec. 185a de la Ley Núm. 80, *supra*, y concebir que la peticionaria no probó los elementos básicos requeridos para incoar una causa de acción por discrimen por razón de embarazo según los postulados de la Ley Núm. 3, *supra*, la Ley Núm. 100, *supra*, y la Ley Núm. 69, *supra*, confirmamos el dictamen del Tribunal de Apelaciones. Veamos los antecedentes fácticos que dieron génesis a las controversias que nos ocupan.

I.

La Sra. Madeline Ortíz Ruperto es dueña y administradora del negocio 100% Natural, el cual opera en el centro comercial Aguadilla Mall desde el 2003. Dicho establecimiento -tipo kiosco- se dedica a la venta de refrescos naturales, batidas de frutas y dulces típicos. En sus primeros años luego de fundado, el negocio sólo operaba en temporadas festivas como navidad, madres, padres y el periodo de *retorno a clases*, al igual que en ferias trimestrales organizadas por la administración del Aguadilla Mall. Estos contratos de alquiler tenían un término de duración de una semana.

En el 2005, la señora Ortíz Ruperto y la administración del referido centro comercial comenzaron a pactar contratos de alquiler con duración de 30 días, sin garantía alguna de renovación.[1] Por causa de esta inseguridad contractual, la señora Ortíz Ruperto sólo ofrecía a sus empleados contratos laborales temporeros y a tiempo parcial, los cuales vencían cada 30 días.

Así las cosas, el 7 de noviembre de 2005 la Sra. Johanna López Fantauzzi fue contratada por la señora Ortíz Ruperto como empleada de línea de 100% Natural. Su contrato establecía un término de empleo de 30 días, el cual garantizaba 20 horas de labor semanal a razón de

---

[1] No fue hasta abril de 2007 que la señora Ortíz Ruperto obtuvo un contrato con el Aguadilla Mall por un periodo continuo de tres años.

$5.15 la hora.[2] Las horas de empleo de la señora López Fantauzzi estaban expresamente condicionadas al horario y a las necesidades del negocio. Según dispone el pacto laboral, la señora López Fantauzzi "[llevaría] a cabo *tareas extraordinarias* o de *duración corta* o por *aumento en [la] producción*" del establecimiento.[3] La peticionaria ocupó el puesto de empleada de línea durante su primer mes y medio de empleo.

El 19 de diciembre de 2005, la señora López Fantauzzi fue ascendida a la posición de *líder de grupo*.[4] Como resultado, su sueldo y responsabilidades fueron aumentados.[5] No obstante, el nuevo contrato laboral reiteraba que la peticionaria era contratada para realizar tareas de *corta duración* o relacionadas al *aumento en la producción del negocio* y que sus horas de trabajo estarían limitadas al horario de operación del establecimiento y a las necesidades de éste. El referido contrato fue renovado en dos ocasiones —el 19 de enero de 2006 y el 19 de febrero del mismo año— venciendo finalmente el 19 de

---

[2] Como empleada de línea, las funciones laborales de la señora López Fantauzzi consistían en mantener el área de servicio limpia, preparar los productos vendidos en el negocio y cumplir con aquellas tareas adicionales delegadas por la señora Ortíz Ruperto.

[3] Apéndice, Pet. de *certiorari*, pág. 149.

[4] La peticionaria era la única empleada que ostentaba esta posición.

[5] Al ser ascendida, el sueldo de la señora López Fantauzzi fue aumentado a $5.40 la hora. Además, le fueron delegadas las tareas adicionales de cuadrar la caja registradora del negocio y depositar en el banco el dinero generado por las ventas del establecimiento. Igualmente, la peticionaria disfrutaba de más horas de trabajo por encima de las 20 horas semanales originalmente pactadas.

marzo de 2006.[6] Todos los contratos renovados tenían un término de duración de 30 días.

El 13 de marzo de 2006, la señora López Fantauzzi acudió a un laboratorio clínico en Aguadilla para realizarse una prueba de embarazo. Una vez obtuvo los resultados clínicos, la peticionaria advino en conocimiento de que se encontraba en estado de gestación. Sin embargo, según el Tribunal de Primera Instancia apreció la prueba, la señora López Fantauzzi no comunicó dicha información a la señora Ortíz Ruperto.

Así las cosas, el domingo 19 de marzo de 2006, la peticionaria fue encomendada a manejar el kiosco ubicado en el Aguadilla Mall debido a que determinado grupo de empleados estaría asignado al Festival de la China en Las Marías bajo la supervisión de la recurrida. En la mañana del día indicado, la señora López Fantauzzi se comunicó con la señora Ortíz Ruperto y le expresó que no podía asistir al trabajo por sufrir vómitos, náuseas y diarrea. En respuesta, la recurrida le indicó que atenderían el asunto de la ausencia de la peticionaria el próximo día. Así pues, el lunes 20 de marzo de 2006, la peticionaria volvió a comunicarse con la señora Ortiz Ruperto para conocer cuál sería su horario de trabajo para la semana en curso. La recurrida le expresó que debían comunicarse en persona antes de divulgarle tal información.

---

[6] La peticionaria ocupó el puesto de *líder de grupo* por espacio de tres meses.

Según fue requerido por la recurrida, ese mismo día la peticionaria acudió al establecimiento para conversar con la señora Ortíz Ruperto. Al arribar al negocio, la señora López Fantauzzi le entregó a la recurrida un certificado médico —expedido el mismo 20 de marzo de 2006— el cual detallaba que no pudo trabajar el 19 de marzo de 2006 por haber padecido de gastroenteritis. El certificado médico no explicitaba que la peticionaria estaba embarazada, o tan siquiera que los síntomas sufridos en el día indicado estaban relacionados a dicho estado de preñez. Según la apreciación del foro sentenciador, la señora López Fantauzzi tampoco expresó a su empleadora que su ausencia se debió a su condición de gestación.

En esa misma conversación, la recurrida le comunicó a la peticionaria que le ofrecería una renovación de su contrato —el cual había vencido el 19 de marzo de 2006— por 30 días más. No obstante, dicho contrato establecería nuevas condiciones de trabajo. Mediante el nuevo contrato, la señora López Fantauzzi dejaría de ocupar el puesto de *líder de grupo*; trabajaría por 10 horas semanales en lugar de 20, y su salario sería reducido. Como justificación para las nuevas condiciones laborales, la señora Ortíz Ruperto explicó que, tanto el kiosco en el Aguadilla Mall como otro kiosco que operaba en el pueblo de Isabela, habían sufrido mermas en los ingresos derivados por concepto de ventas. Ante las nuevas

condiciones de empleo, la peticionaria rechazó la renovación de su contrato.

Posteriormente, la señora López Fantauzzi se reportó a la Corporación del Fondo del Seguro del Estado (CFSE) el 23 de marzo de 2006, arguyendo que sufría problemas emocionales relacionados a la alegada pérdida de su empleo.[7] Ese mismo día, facultativos de la CFSE recomendaron que la señora López Fantauzzi fuera puesta en descanso.[8] Copia de estos documentos fueron enviados a la recurrida en una fecha posterior al cese de funciones de la peticionaria.

El 13 de junio de 2006, la CFSE dio de alta de tratamiento médico a la peticionaria. Subsiguientemente - el 31 de julio de 2006- el Administrador de la CFSE le comunicó a la señora López Fantauzzi que, luego de examinar los informes médicos pertinentes, su condición

---

[7] Los documentos de la Corporación del Fondo del Seguro del Estado revelan que la peticionaria le informó a la corporación pública indicada que estaba embarazada. Véase Apéndice, Pet. de Certiorari, págs. 173-174 y 177. Según la apreciación del foro primario, esta información aún era desconocida por la recurrida.

[8] Según el Tribunal de Primera Instancia, esto implicaba que la señora López Fantauzzi no estaba apta para reanudar su trabajo. Apéndice, Pet. de *certiorari*, pág. 77.

Amerita señalar que, en el ínterin, la peticionaria acudió el 24 de marzo de 2006 al establecimiento de 100% Natural para recoger y solicitar la liquidación de sus haberes correspondientes a las horas que había trabajado la semana antes de rechazar el nuevo contrato. Allí, la señora Ortíz Ruperto le entregó una carta que indicaba que el contrato de la peticionaria había vencido el 19 de marzo de 2006 y que el 21 de marzo del referido año la recurrida le había ofrecido renovarle el contrato como empleada de línea por menos horas y un menor salario. La peticionaria se negó a firmar la carta reseñada por estar en desacuerdo con las nuevas condiciones de empleo. En el juicio, la señora López Fantauzzi catalogó la mencionada carta como una de despido. Según indica el foro sentenciador, en el día antes mencionado la peticionaria no le informó a la recurrida que estaba embarazada.

emocional no estaba protegida por la Ley de Compensaciones por Accidentes del Trabajo, ya que "no ocurrió en el curso ni como consecuencia del empleo".[9]

El 22 de mayo de 2006, la señora López Fantauzzi presentó una querella contra 100% Natural por alegado despido discriminatorio por razón de embarazo ante la Unidad Anti-discrimen del Departamento del Trabajo y Recursos Humanos (Unidad Anti-discrimen). En la referida querella, la peticionaria arguyó, en términos generales, que el 13 de marzo de 2006 le informó a la señora Ortíz Ruperto que estaba embarazada[10] y que por causa de su embarazo la recurrida tomó acciones adversas contra la señora López Fantauzzi, las cuales culminaron en el alegado despido de ésta. Esta querella fue notificada a 100% Natural el 2 de junio de 2006, fecha en la cual la señora Ortíz Ruperto advino en conocimiento del embarazo de la peticionaria por primera vez, según lo apreció el Tribunal de Primera Instancia.[11]

---

[9] Apéndice, Alegato de la Parte Recurrida, pág. 10. La decisión del Administrador también indica que la peticionaria había alegado que, debido a varias situaciones de maltrato emocional, no podía dormir; no comía bien, y tenía miedo que dichos percances le afectaran su embarazo.

[10] Según el testimonio de la señora López Fantauzzi en juicio, ésta le mostró a la recurrida el resultado de la prueba de laboratorio para detección de embarazo a las 5:00 p.m. del 13 de marzo de 2006. Sin embargo, el foro sentenciador no le confirió crédito a tal versión de los hechos ya que encontró que en el día indicado la peticionaria había culminado su turno a las 2:30 p.m. y nunca regresó al trabajo luego de dicha hora.

[11] El 7 de diciembre de 2006 se celebró una vista administrativa para atender la querella indicada.

Mientras tanto, el 9 de julio de 2006 la peticionaria acudió al Negociado de Seguridad de Empleo del Departamento del Trabajo y Recursos Humanos (Negociado) para solicitar los beneficios por desempleo provistos por dicha entidad.[12]  Como resultado, el 9 de julio de 2006 dicha oficina se comunicó con la recurrida para conocer su versión de los hechos conducentes al alegado despido.  La recurrida refutó que hubiese despedido a la peticionaria y argumentó que, en efecto, la señora López Fantauzzi había rechazado una renovación de su contrato laboral por éste representar una reducción en sus horas de empleo al igual que una disminución en sus responsabilidades y salario. Igualmente, la señora Ortíz Ruperto procedió a notificarle al Negociado que podía ofrecerle a la peticionaria, en ese momento, una oferta de empleo de 12 horas semanales, por 30 días, a razón de $5.15 la hora.  Por tal motivo, la señora López Fantauzzi, por referido del Negociado, acudió al establecimiento de 100% Natural y pactó un contrato de 12 horas semanales desde el 15 de junio de 2006 hasta el 15 de agosto del año indicado.

El 13 de agosto de 2006 –dos días antes de vencer el referido contrato- la peticionaria acudió nuevamente ante el Negociado para tramitar los beneficios por razón de

---

[12] Surge del expediente que, en una fecha posterior al 20 de marzo de 2006 pero antes del 9 de julio de dicho año, la peticionaria visitó al Negociado de Seguridad de Empleo del Departamento del Trabajo y Recursos Humanos para verificar si su empleadora tenía la autoridad en ley de reducirle sus horas de trabajo como, en efecto, proponía hacer. En esa ocasión la señora López Fantauzzi no argumentó discrimen por razón de embarazo o cualquier otra causa de acción laboral.

desempleo. En su solicitud, la señora López Fantauzzi argumentó que su desempleo se debía a *escasez de trabajo*.[13] En ningún momento la señora López Fantauzzi arguyó que la no renovación de su contrato laboral se debió a su estado de preñez.

Al vencer el indicado contrato el 15 de agosto de 2006, la recurrida le entregó una carta a la peticionaria en la cual le explicaba que su contrato de 30 días no sería renovado debido a que las ventas en los meses de agosto y septiembre habían decaído significativamente. En consecuencia, 100% Natural no estaba en la posición económica necesaria para cumplir con el compromiso de sueldo pactado con la señora López Fantauzzi.

A raíz de los eventos reseñados, el 31 de octubre de 2006 la señora López Fantauzzi incoó la demanda de epígrafe ante el Tribunal de Primera Instancia,[14] alegando que su despido fue injustificado y discriminatorio por razón de su embarazo. El foro sentenciador celebró el juicio en su fondo el 18 de junio de 2008[15] y emitió su dictamen el 13 de noviembre del mismo año.[16]

---

[13] Véase, Apéndice, Pet. de *certiorari*, pág. 81.

[14] La peticionaria radicó su demanda antes de recibir, de parte de la Unidad Anti-discrimen del Departamento del Trabajo y Recursos Humanos, una autorización para desistir de la querella radicada y proceder a instar una causa de acción judicial contra la recurrida. Esta autorización vino a ser expedida por la indicada entidad el 2 de mayo de 2008, casi dos años luego de instarse la demanda de epígrafe ante el foro judicial.

[15] En el juicio la prueba testifical consistió en el testimonio de la señora López Fantauzzi y su esposo, al igual que el testimonio de la recurrida.

[16] Esta Sentencia fue notificada el 21 de noviembre de 2008.

En su Sentencia, el foro primario determinó que la peticionaria no tenía ninguna expectativa legítima de que alguno de sus contratos temporeros de 30 días fuesen renovados, ya que, debido a la merma en las ventas de 100% Natural, existía justa causa -según dicho término es definido por la Ley Núm. 80, *supra*- para que la recurrida se negara a renovar los referidos contratos por la misma cantidad de horas, salario y responsabilidades. Igualmente, el foro de primera instancia estableció que, debido a que la recurrida desconocía del embarazo de la peticionaria al momento del alegado despido, ésta no logró establecer una causa de acción por discrimen según los elementos probatorios requeridos por la Ley Núm. 3, *supra*; la Ley Núm. 100, *supra*, y la Ley Núm. 69, *supra*. Por último, el Tribunal de Primera Instancia entendió que la peticionaria no tenía derecho a las protecciones por antigüedad provistas por la Ley Núm. 80, *supra.* En atención a todo lo anterior, el foro primario desestimó la demanda de la peticionaria en todas sus causas de acción, sin especial imposición de costas, gastos ni honorarios de abogado.

Inconforme con el dictamen emitido por el Tribunal de Primera Instancia, el 18 de diciembre de 2008 la peticionaria apeló dicha Sentencia ante el Tribunal de Apelaciones. En esencia, le imputó al foro primario haber errado al concluir que la recurrida no actuó discriminatoriamente al despedir a la peticionaria

mientras ésta se hallaba en estado de embarazo. El 7 de julio de 2009 el foro apelativo intermedio dictó su Sentencia confirmando al Tribunal de Primera Instancia.

Oportunamente, el 7 de agosto de 2009 la señora López Fantauzzi recurrió ante nos mediante un recurso de *certiorari*. En dicho recurso la peticionaria alega que el Tribunal *a quo* incurrió en el siguiente error:

> Erró el Tribunal de Apelaciones al confirmar la Sentencia desestimatoria dictada por el Tribunal de Primera Instancia, Sala Superior de Aguadilla, y concluir que el despido de la Sra. Johanna López Fantauzzi no fue discriminatorio y estuvo justificado.

A la luz del trasfondo fáctico descrito, procedemos a exponer el marco jurídico aplicable a las controversias reseñadas.

II.

*A. Protección contra el despido injustificado de empleados contratados a tiempo determinado o para proyecto u obra cierta*

En nuestro ordenamiento legal un empleado puede ser contratado por tiempo indeterminado, o por tiempo fijo, o para un proyecto u obra cierta. R. Delgado Zayas, <u>Apuntes para el Estudio de la Legislación Protectora del Trabajo en el Derecho Laboral Puertorriqueño</u>, San Juan, Ed. Ramallo Bros. Printing, Inc., 2007, págs. 21-22; Art. 1473 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 4111 ("Pueden arrendarse los servicios de criados y trabajadores sin tiempo fijo o por cierto tiempo"). La protección que gozará el obrero en la tenencia y seguridad

de su empleo dependerá del tipo de contrato laboral pactado entre el patrono y éste. Así, cuando el obrero es contratado para rendir sus servicios por *tiempo indeterminado*, la Ley Núm. 80, *supra*, le proveerá ciertas protecciones contra el despido injustificado. Por otro lado, cuando el trabajador sólo ha sido contratado de forma *bona fide* por *tiempo determinado o para proyecto u obra cierta*, el Art. 1476 del Código Civil (31 L.P.R.A. sec. 4114) será la protección principal surtida al empleado contra una destitución sin justa causa, siempre y cuando las labores del empleado requieran destrezas manuales. Véanse: Soc. de Gananciales v. Velez & Asoc., 145 D.P.R. 508, 518-519 (1998); Camacho Arroyo v. E.L.A., 131 D.P.R. 718, 728-731 (1992). Cuando las labores del empleado no requieran destrezas manuales y el contrato de empleo temporero sea uno *bona fide* -según dicho término es definido por la Ley Núm. 80, *supra*- los tribunales deberán interpretar el contrato laboral a la luz de los principios generales del Derecho de obligaciones y contratos y nuestra legislación protectora del trabajo. Íd. Abundemos.

Ante un contrato laboral pactado por *tiempo indeterminado*, nuestro ordenamiento legal, mediante los postulados de la Ley Núm., 80, *supra*, protege "de una forma más efectiva... [al obrero en] la tenencia de su empleo mediante... [el derecho a] unos remedios más justicieros y consubstanciales con los daños causados por

un despido injustificado". Exposición de Motivos de la Ley Núm. 80, *supra*, Leyes de Puerto Rico, pág. 268. Véanse: Vélez Cortés v. Baxter Healthcare Co., 2010 T.S.P.R. 110, pág. 12, 179 D.P.R. ___ (2010), citando a Díaz v. Wyndham Hotel Corp., 155 D.P.R. 364 (2001); Vélez Rodríguez v. Pueblo Int'l, Inc., 135 D.P.R. 500, 510 (1994). Particularmente, la Ley Núm. 80, *supra*, le garantiza a todo empleado que trabaje mediante remuneración de alguna clase y que sea contratado por *tiempo indeterminado*, una compensación por su patrono -además del sueldo devengado- en caso de ser despedido sin justa causa.[17] 29 L.P.R.A. sec. 185a.

---

[17] La Ley Núm. 80, de 30 de mayo de 1976 (29 L.P.R.A. secs. 185a-185m) dispone que

"...se entenderá por justa causa para el despido de un empleado: (a) Que el obrero siga un patrón de conducta impropia o desordenada; (b) La actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo tardía y negligentemente o en violación de las normas de calidad del producto que se produce o maneja por el establecimiento; (c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidas para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado; (d) Cierre total, temporero o parcial de las operaciones del establecimiento. Disponiéndose, que en aquellos casos en que la empresa posea más de una oficina, fábrica, sucursal o planta, el cierre total, temporero o parcial de las operaciones de cualquiera de éstos establecimientos constituirá justa causa para el despido a tenor con esta sección; (e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en servicios rendidos al público; (f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido.

No se considerará despido por justa causa aquel que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento. Tampoco se considerará justa causa para el despido de un empleado la colaboración o expresiones hechas por éste, relacionadas con el negocio de su patrono, en una investigación ante cualquier foro administrativo, judicial o legislativo en Puerto Rico,

Esta compensación, comúnmente denominada *mesada*, consiste en:

(a) el sueldo correspondiente a dos (2) meses por concepto de indemnización, si el despido ocurre dentro de los primeros cinco (5) años de servicio; el sueldo correspondiente a tres (3) meses si el despido ocurre luego de los cinco (5) años hasta los quince (15) años de servicio; el sueldo correspondiente a seis (6) meses si el despido ocurre luego de los quince (15) años de servicio;

(b) una indemnización progresiva adicional equivalente a una (1) semana por cada año de servicio, si el despido ocurre dentro de los primeros cinco (5) años de servicio; dos (2) semanas por cada año de servicio, si el despido ocurre luego de los cinco (5) años hasta los quince (15) años de servicio; tres (3) semanas por cada año de servicio, luego de haber completado quince (15) años o más de servicio. 29 L.P.R.A. sec. 185a (2010).[18]

Por otra parte, cuando el obrero es contratado por *tiempo cierto o para un proyecto u obra determinada*, la Ley Núm. 80, *supra*, no es de aplicación. Departamento del Trabajo y Recursos Humanos, <u>Guía Revisada para la Aplicación de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada</u>, 2000, pág. 57. Más bien, el Art. 1476 del Código Civil, *supra*, representará la fuente principal de

---

cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada según la ley. En este último caso, el empleado así despedido tendrá derecho, además de cualquier otra adjudicación que correspondiere, a que se ordene su inmediata restitución en el empleo y a que se le compense por una suma igual a los salarios y beneficios dejados de percibir desde la fecha del despido hasta que un tribunal ordene la reposición en el empleo". Art. 2 de la Ley Núm. 80, *supra*, 29 L.P.R.A. sec. 185b.

[18] "Mediante [el pago de la mesada], se le brinda a los trabajadores que han sido despedidos sin justa causa, la oportunidad de disfrutar de una indemnización que les permita suplir sus necesidades básicas durante el tiempo que les pueda tomar conseguir un nuevo empleo". <u>Díaz v. Wyndham Hotel Corp.</u>, supra, pág. 375 (2001).

protección del trabajador asalariado contra un despido injustificado, siempre y cuando las labores del empleado requieran destrezas manuales semejantes a las de un artesano, labrador, o aquellas dispuestas en el referido artículo. Íd. Véanse, también: Soc. de Gananciales v. Velez & Asoc., supra, págs. 518-519 (El Art. 1476 del Código Civil, *supra*, no aplica a una situación en que se despida a un inspector de obras el cual, de ordinario, no realiza labores manuales sino que supervisa las labores realizadas por otros, como por ejemplo, los trabajos realizados por los obreros de la construcción); Camacho Arroyo v. E.L.A., supra, págs. 726-728 (El Art. 1476 del Código Civil, *supra*, no aplica a un empleado gerencial, cuyo contrato de empleo disponía su resolución por cualquiera de las partes, siempre y cuando mediara una notificación a tales efectos con treinta (30) días de anticipación); C. Zeno Santiago y V. M. Bermúdez, Tratado de Derecho del Trabajo, San Juan, Publicaciones JTS, 2003, pág. 175.

Así, el Art. 1476 del Código Civil, *supra*, provee que "[l]os empleados de labranza, menestrales, artesanos y demás trabajadores asalariados por cierto término o para cierta obra no pueden despedirse ni ser despedidos antes del cumplimiento del contrato, sin justa causa". (Énfasis nuestro). 31 L.P.R.A. sec. 4114.

> En caso de ser despedido sin justa causa *antes de terminar su contrato*, el trabajador tendrá derecho al resarcimiento de los daños ocasionados por el quebrantamiento del contrato.

> Los daños sufridos por el trabajador se determinan sobre la base de los salarios dejados de recibir por motivo del despido más cualquier otro que se pueda establecer relacionado con el mismo. (Énfasis nuestro). Departamento del Trabajo y Recursos Humanos, *op. cit.*, pág. 57. Véanse, también: Cassasús v. Escambrón Beach Hotel, 86 D.P.R. 375, 379 (1962); Long Corp. v. Trib. de Distrito, 72 D.P.R. 788 (1951); C. Zeno Santiago y V. M. Bermudez, *op. cit.*, pág. 181.

Por otro lado, cuando las funciones del obrero no requieran destrezas manuales como aquellas consignadas en el Art. 1476, *supra*, esta Curia ya ha resuelto que los remedios del Art. 1476 del Código Civil, *supra*, no serán de aplicación, sino que el despido del empleado se regirá por las normas generales del Derecho de Obligaciones y Contratos de nuestro Código Civil a la luz de nuestra legislación protectora del trabajo. Soc. de Gananciales v. Velez & Asoc., supra. Como tal, los Tribunales analizarán el despido del empleado conforme

> [al] principio de la libertad de contratación, según el cual las partes contratantes pueden establecer los pactos, las cláusulas y las condiciones que tengan por convenientes, siempre que no sean contrarios a las leyes, a la moral ni al orden público. Art. 1207 del Código Civil, 31 L.P.R.A. sec. 3372. [Igualmente,]... cuando los términos de un contrato [sean] claros y no dejan lugar a dudas sobre la intención de los contratantes, no cabe recurrir a reglas de interpretación. Art. 1233 del Código Civil, 31 L.P.R.A. sec. 3471. Sabido es, también, que a partir del perfeccionamiento de un contrato, las partes quedan obligadas al cumplimiento de lo expresamente pactado y a las consecuencias que se deriven de éste conforme a la buena fe, al uso y a la ley. Art. 1210 del Código Civil, 31 L.P.R.A. sec. 3375. Íd., págs. 516-518.

No obstante todo lo anterior, la Ley Núm. 80, *supra*, provee ciertas protecciones adicionales a todo empleado

contratado por *término cierto* a pesar de dicha Ley sólo ser de aplicación a empleados contratados por *término indefinido*. En esencia, estas protecciones consisten en: (1) la instauración de una presunción rebatible de que todo despido, separación, cesantía, o la no renovación del contrato de un trabajador empleado por término cierto o para un proyecto u obra cierta, representa una acción sin justa causa cobijada por la Ley Núm. 80, *supra*, a no ser que se trate de un contrato por término cierto *bona fide*; y (2) la definición pormenorizada de lo que constituye un *contrato bona fide* por término cierto o para un proyecto u obra específica. Veamos.

El Art. 1 de la Ley Núm. 80, *supra*, establece en su tercer párrafo que

> ... el mero hecho de que un empleado preste servicios al amparo de un contrato por tiempo determinado por sí solo no tendrá el efecto automático de privarle de la protección de las secs. 185a a 185m de este título [ Ley Núm. 80, *supra*] *si la práctica y circunstancias involucradas u otra evidencia en la contratación fueren de tal naturaleza que tiendan a indicar la creación de una expectativa de continuidad de empleo o aparentando ser un contrato de empleo por tiempo indeterminado bona fide*. En estos casos los empleados así afectados se considerarán como si hubieren sido contratados sin tiempo determinado. Excepto cuando se trate de empleados contratados por un término cierto *bona fide* o para un proyecto u obra cierta *bona fide*, toda separación, terminación o cesantía de empleados contratados por termino cierto o proyecto u obra cierta, o la no renovación de su contrato, *se presumirá que constituye un despido sin justa causa* regido por las secs. 185a a 185m de este título. (Énfasis nuestro). 29 L.P.R.A. sec. 185a

> De tal manera, el legislador prohíbe el uso de los

contratos por término fijo renovados a voluntad del

patrono mensual o anualmente de forma frecuente, como mecanismo de subterfugio para evadir el cumplimiento de la Ley Núm. 80, *supra*. Exposición de Motivos de la Ley Núm. 7, de 1 de marzo de 1988, Leyes de Puerto Rico, pág. 50; C. Zeno Santiago y V. M. Bermudez, *op. cit.*, págs. 176-178. Es por ello que, para evitar que los patronos diseñen contratos por término fijo u obra cierta que eludan el ámbito de protección provisto por la Ley Núm. 80, *supra*, será crucial que no tan sólo se catalogue un contrato como uno por término fijo por así disponerlo su título, sino que resulta imperativo examinar *si la práctica y las circunstancias envueltas u otra evidencia en la contratación han creado en el empleado una expectativa de continuidad de empleo*.[19] Además, el patrono deberá rebatir una presunción instaurada por el Art. 1 de la Ley Núm. 80, *supra*, la cual establece que todo despido, separación, terminación, cesantía de un empleado contratado por tiempo determinado, o la no renovación de su contrato, se considerará como una actuación sin justa causa. Si el patrono no rebate tal presunción, el obrero será merecedor de las protecciones provistas por la Ley Núm. 80, *supra*, incluyendo la mesada. Véanse: C. Zeno

---

[19] Luego de examinar nuestros pronunciamientos jurisprudenciales, no encontramos que el término *expectativa de continuidad de empleo* haya sido definido por esta Curia en el ámbito laboral-privado. No obstante, resulta persuasivo el significado que le hemos brindado a tal término en el ámbito público-gubernamental. Así, hemos dispuesto que los empelados públicos transitorios sólo albergan una expectativa de continuidad de empleo "durante el término de su nombramiento". Orta v. Padilla Ayala, 131 D.P.R. 227, 243 (1992). Esta expectativa de continuidad debe surgir de una apreciación objetiva del contrato y no sólo subjetiva.

Santiago y V. M. Bermudez, *op. cit.*, págs. 176-178; Ley Núm. 46 de 6 de agosto de 1991, L.P.R., pág. 160-161.

Sin embargo, esta presunción no será de aplicación si el patrono logra establecer que el contrato por término fijo u obra cierta pactado con el obrero es uno *bona fide*. Según el Art. 11 de la Ley Núm. 80, *supra*,

> [s]e considerará bona fide un contrato de empleo por un término cierto o para un proyecto o una obra cierta, aquel que se hace por escrito, durante la primera jornada de trabajo... y que tiene el propósito, y así se hace constar, de sustituir durante su ausencia a un empleado en el uso de licencia legalmente establecida o establecida por el patrono o para llevar a cabo tareas extraordinarias o de duración cierta como son, sin que constituya una limitación, los inventarios anuales, la reparación de equipo, maquinaria o las facilidades de la empresa, el embarque y desembarque casual de carga, el trabajo en determinadas épocas del año como la Navidad, las ordenes temporeras de aumentos de producción y cualquier otro proyecto o actividad particular de corta duración o duración cierta fija. 29 L.P.R.A. sec. 185(a).

De lo anterior se desprende que un contrato de empleo por término u obra cierta será *bona fide* -y evadirá la aplicación de la presunción impuesta por el Art. 1 de la Ley Núm. 80, *supra*- si cumple con los siguientes requisitos: (1) el contrato deberá hacerse por escrito; (2) durante el primer turno o jornada de trabajo del empleado; y (3) que se haga con el propósito -y así se haga constar- de (a) sustituir durante su ausencia a un empleado en el uso de licencia establecida por ley o por el patrono, (b) llevar a cabo *tareas extraordinarias o de duración cierta*, tales como lo son -a modo de ejemplo- los inventarios anuales, la reparación de equipo, maquinaria o

las facilidades de la empresa, el embarque o desembarque casual de carga y el trabajo en determinadas épocas del año como Navidad, o (c) para cumplir con las órdenes temporeras de *aumentos de producción y cualquier otro proyecto o actividad particular de corta duración o de duración cierta fija.* Véase Secretario del Departamento de Trabajo y Recursos Humanos, Opinión Núm. 91-5 de 8 de noviembre de 1991.

Finalmente, el Art. 11 de la Ley Núm. 80, *supra*, establece que, en tales casos, "el patrono vendrá obligado a alegar en su contestación a la demanda estos hechos y a probar la existencia de... [dicho] contrato *bona fide* para entonces quedar eximido de cumplir con el remedio [de la mesada provisto por dicha Ley], salvo que el patrono pruebe que el despido fue justificado". 29 L.P.R.A. 185k(a). Si el patrono no logra establecer que el contrato por término fijo es uno *bona fide* o, en su lugar, que existió justa causa para el despido, deberá indemnizar al obrero con la mesada, según lo ordena la Ley Núm. 80, *supra*.

B. *Protecciones contra el discrimen en el empleo*

La Sec. 1 de nuestra Carta de Derechos establece con notoria claridad que

> la dignidad del ser humano es inviolable. Todos los hombres son iguales ante la Ley. *No podrá establecerse discrimen alguno por motivo de* raza, color, *sexo*, nacimiento, origen o condición social, ni ideas políticas o religiosas. Tanto *las leyes* como el sistema de instrucción pública *encarnarán estos principios de esencial igualdad humana.*

(Énfasis nuestro).   Art. II, Sec. 1, Const. E.L.A., L.P.R.A., Tomo 1, ed. 2008, pág. 272.

De tal manera, nuestro sistema constitucional protege al ciudadano puertorriqueño contra todo acto de discrimen por razón de su género.  Así, pues, nuestro ordenamiento legal ha respondido a dicho principio cardinal mediante la promulgación de leyes laborales que proscriben tajantemente toda práctica de discrimen por razón del sexo de una persona, a saber: la Ley Núm. 3, *supra*; la Ley Núm. 100, *supra*; la Ley Núm. 69, *supra*, y la Ley Núm. 17 de 22 de abril de 1988, 29 L.P.R.A. sec. 155 *et seq.*, conocida como Ley Contra el Hostigamiento Sexual en el Empleo. Soc. de Gananciales v. Centro Gráfico, 144 D.P.R. 952, 958-959 (1998); Santiago v. Oriental Bank & Trust, 157 D.P.R. 250, 256 (2002).  Por ser pertinente al caso de autos, a continuación elaboramos sobre el contenido jurídico de las primeras tres disposiciones legales previamente mencionadas.

*1. Protección Contra el Discrimen de las Madres Obreras*

"La Ley Núm. 3, *supra*, forma parte de un esquema trazado por el Estado para ofrecerle a la mujer obrera una mayor garantía contra el discrimen en el trabajo por razón de sexo".[20]   Rivera Águila v. K-Mart de P.R., 123 D.P.R. 599, 609 (1989).  Su promulgación procuró

> proteger a la obrera embarazada, para que no sufriese riesgos en el trabajo *ocasionados específicamente por razón de su estado de*

---

[20] En el pasado hemos establecido que el discrimen por razón de embarazo es una modalidad del discrimen por razón de sexo.  Santiago v. Oriental Bank & Trust, 157 D.P.R. 250, 256 (2002).

*preñez.* La Ley Núm. 3, *supra*, partía de la premisa de que *aunque la condición de embarazo le podía impedir a una mujer rendir una jornada de trabajo ordinaria, ello no debía dar lugar a que por tal razón sufriese sanciones en su empleo.* (Énfasis en el original). Soc. de Ganaciales v. Centro Gráfico, supra, pág. 971 (Opinión disidente, Juez Asociado, señor Fuster Berlingeri).

Ante los cambios sociales experimentados por nuestra comunidad puertorriqueña, el Legislador ha enmendado dicha disposición legal en diversas instancias, con el fin de acrecentar el ámbito de protecciones laborales originalmente provisto a las madres obreras puertorriqueñas. Véase R. Delgado Zayas, *op. cit.*, pág. 214. Así, la Ley Núm. 3, *supra* -la cual en sus inicios se limitaba a garantizar el mero derecho a un descanso de cuatro semanas antes del alumbramiento y cuatro semanas después- ha evolucionado a grandes pasos, disponiendo en la actualidad que toda mujer obrera y embarazada puede gozar de las siguientes protecciones fundamentales:

> a. Una licencia básica equivalente a un periodo de descanso de cuatro semanas antes y después del parto, a sueldo completo.
> b. Una licencia adicional de doce semanas en caso de una complicación en el parto, sin paga.
> c. La obligación del patrono de reservar el empleo de ésta, durante esas licencias.
> [d]. *Una prohibición al patrono respecto al despido sin justa causa de la mujer embarazada, así como de discrimen por razón de embarazo.* (Énfasis nuestro). Íd., pág. 215. Véase, también, 29 L.P.R.A. secs. 467, 468 y 469.

Entre las protecciones previamente indicadas, la Sec. 4 de la Ley bajo análisis atiende la prohibición estatutaria respecto al despido sin justa causa de una obrera en estado de preñez. Rivera Águila v. K-Mart de

P.R., supra, pág. 608. Concretamente -y en lo pertinente- la sección nombrada establece que "*[e]l patrono no podrá, sin justa causa, despedir a la mujer embarazada. ... [Además,] [n]o se entenderá que es justa causa [para el despido] el menor rendimiento para el trabajo, por razón de embarazo*".[21] (Énfasis nuestro). 29 L.P.R.A. sec. 469.

De lo anterior se desprende que "cuando una empleada reclama y prueba que fue despedida de su empleo sin justa causa mientras estaba embarazada, el patrono responderá al amparo de la Ley [Núm. 3, *supra*,] *a menos que logre establecer que el despido estuvo justificado*". (Énfasis nuestro). Santiago v. Oriental Bank & Trust, supra, pág. 258. Así, la Ley Núm. 3, *supra*, establece una *presunción de despido injustificado*, la cual impone sobre el patrono el peso de establecer que existieron razones justificadas para el despido de la empleada, independientes al embarazo.

En el pasado nos hemos expresado sobre la carga probatoria que la Sec. 4 de la Ley Núm. 3, *supra*, le impone a un patrono al momento de defenderse de una reclamación bajo la referida disposición legal. Precisamente, en Rivera Águila v. K-mart de P.R., *supra*, pág. 610, dispusimos que "[e]n reclamaciones al amparo de la Ley Núm. 3, *supra*, surge ... una *presunción de despido*

---

[21] Al prohibir la destitución de la mujer embarazada "se evitan las consecuencias socioeconómicas que durante el embarazo y después de éste podría conllevar tal despido". Meléndez v. Asoc. Hosp. del Maestro, 156 D.P.R. 828, 838 (2002).

*injustificado que el patrono viene obligado a rebatir.* Es al patrono al que le corresponde persuadir al juzgador de la no existencia del hecho presumido: el despido injustificado". (Énfasis nuestro). Como resultado,

> una vez tablada una acción por la obrera, mediante la cual reclamó resarcimiento por haber sido despedida de su empleo sin justa causa mientras estaba embarazada, el patrono viene obligado a alegar en su contestación los hechos que motivaron el despido. Es al patrono, que opone como defensa el haber mediado justa causa para el despido, a quien le corresponde probar, mediante la preponderancia de la evidencia, que el despido estuvo justificado. El peso de la prueba se desplaza de la parte demandante hacia el demandado, y es sobre éste que recae el *onus probandi.* (Énfasis en el original). Íd. Véase, también, Meléndez v. Asoc. Hosp. del Maestro, 156 D.P.R. 828, 838 (2002).

A la luz de lo anterior, en Soc. de Gananciales v. Centro Gráfico, *supra*, pág. 960, añadimos que "[e]l requisito esencial para la aplicación de la Ley Núm. 3, *supra*, es *que la mujer haya sido despedida durante su embarazo;* ante ese hecho, le corresponde a la parte demandada el peso de probar que había *justa causa* ... para terminar la relación obrero-patronal". (Énfasis en el original). Esto se debe a que "lo determinante en estos casos no es si el despido fue motivado por la condición de embarazo de la demandante, sino *si estando embarazada* la demandante, el patrono la despidió por *causa injustificada".* (Énfasis nuestro). Santiago v. Oriental Bank & Trust, supra, pág. 258.

A su vez, al momento del patrono intentar demostrar que hubo *justa causa* para el despido de la madre obrera,

será crucial tener presente que, bajo la Ley Núm. 3, *supra*, dicho término ha sido variado por el Legislador. Esto se debe a que, en la situación particular de la mujer, el concepto *justa causa* no alberga el menor rendimiento en el empleo de ésta "cuando dicho menor rendimiento es consecuencia directa del estado de embarazo". Íd., pág. 257.[22]

> Así, pues, bajo esta ley surgen dos protecciones relacionadas al despido de una empleada embarazada: (1) la prohibición del despido sin justa causa, *que se refiere al concepto justa causa bajo las leyes laborales*, y (2) la prohibición de despido por merma en la producción como consecuencia del embarazo, lo cual, en el caso de una mujer en estado de gestación, no constituye justa causa para el despido. (Énfasis nuestro). Íd.

Del patrono no lograr refutar dicha presunción de despido injustificado, la Ley Núm. 3, *supra*, le impone a éste ciertas sanciones -civiles y criminales- que le brindan mayor protección a la madre obrera injustamente despedida, en comparación con la protección mínima provista por la Ley Núm. 80, *supra*. Íd., pág. 260. Así, la Sec. 6 de la Ley Núm. 3, *supra*, articula que un patrono que despidiere a una madre obrera de su trabajo por razón de su embarazo se expone a la siguiente penalidad criminal:

> Incurrirá en un delito menos grave ... y, convicto que fuere, se le impondrá una multa no menor de mil dólares ($1,000) ni mayor de cinco mil dólares ($5,000) o reclusión por un término no menor de treinta (30) días, ni mayor de

---

[22] "Este menor rendimiento se refiere no solo a aquel que se produce en términos cuantitativos, sino al que surge en términos cualitativos". Santiago v. Oriental Bank & Trust, 157 D.P.R. 250, 257 (2002).

noventa (90) días, o ambas penas a discreción del tribunal.  29 L.P.R.A. sec. 472.

Además, la Sec. 4 de la Ley Núm. 3, *supra*, añade una sanción de naturaleza civil, la cual consiste en lo siguiente:

> Todo patrono que despida, suspenda, reduzca el salario, o discrimine en cualquier forma contra una trabajadora por razón de la merma en su producción mientras ésta se encuentre en estado de embarazo o rehúse restituirla en su trabajo luego del alumbramiento ..., incurrirá en responsabilidad civil por una suma igual al doble del importe de los daños causados a la trabajadora, o por una suma no menor de mil dólares ($1,000) ni mayor de cinco mil dólares ($5,000) a discreción del tribunal si no se pudieran determinar daños pecuniarios o el doble de estos, si montaran a una suma menor de mil dólares ($1,000).

> La empleada además tendrá derecho a que se le reponga en su trabajo so pena de incurrir el patrono en daños adicionales idénticos o iguales a los establecidos en esta sección.

No obstante lo reseñado, el patrono disfruta de ciertas defensas afirmativas que le asisten al momento de rebatir la presunción de despido injustificado creada por la Ley Núm. 3, *supra*.  Primeramente –y como ya hemos visto– el patrono puede articular las razones que establezcan que el despido de la empleada, en efecto, estuvo *justificado* –según tal concepto es definido por la Ley Núm. 80, *supra*–.  Segundo, en <u>Santiago v. Oriental Bank & Trust</u>, supra, pág. 258, esta Curia dispuso que *el desconocimiento por parte del patrono del estado de embarazo de una empleada al momento de despedirla*, constituye una *defensa afirmativa* en una demanda por

despido injustificado al amparo de la Ley Núm. 3, *supra*.
Lo anterior encuentra su razón de ser en que

> sostener que bajo dicho estatuto es irrelevante
> que el patrono conozca o no del embarazo
> equivaldría a eliminar el eje central de dicho
> estatuto: disuadir la conducta voluntaria nociva
> de los patronos contra las mujeres embarazadas,
> disponiendo severas sanciones económicas contra
> aquellos patronos que, a sabiendas, subviertan
> la política pública laboral esbozada en la Ley
> de Madres Obreras.
>
> La conducta reprochable bajo esta legislación es
> precisamente que el patrono, *teniendo
> conocimiento del embarazo de la obrera, tome la
> decisión de despedirla sin que medie una causa
> justificada para ello. Es el conocimiento del
> embarazo por parte del patrono lo que establece
> la culpa de éste, agrava la acción de despido
> sin justa causa y justifica que se le impongan
> con todo su rigor las sanciones económicas que
> establece la Ley de Madres Obreras*. (Énfasis en
> el original). Íd., pág. 262.

Consecuentemente, aunque la Ley Núm. 3, *supra*, crea una presunción de que el despido de una mujer obrera, mientras estaba embarazada, es injustificado, "[s]i el patrono desconocía del hecho del embarazo, la ley aplicable es la de despido injustificado, Ley Núm. 80, *supra*, mientras que si lo sabía, el estatuto aplicable es la Ley de Madres Obreras [, *supra*]." Íd., pág. 264. "Por supuesto, la carga probatoria para establecer dicha defensa corresponde al patrono, y la obrera, a su vez, tendrá la oportunidad de demostrar —mediante evidencia directa o circunstancial— que el patrono conocía del embarazo o que dicho conocimiento le era imputable". Martínez v. Acana Corp., 157 D.P.R. 730, 737 (2002)

(Sentencia, Opinión de conformidad emitida por la Jueza Asociada, Señora Naveira de Rodón).

*2. Protección contra el discrimen por razón de sexo*

El discrimen por razón del embarazo de una empleada representa una modalidad del discrimen por razón de sexo. Rivera Águila v. K-Mart de P.R., supra. Como resultado, ante un alegado despido discriminatorio por motivo de preñez, resulta imperativo examinar las protecciones provistas por la Ley Núm. 100, *supra*, y la Ley Núm. 69, *supra*, las cuales proscriben el discrimen por razón de género en el contexto obrero-patronal.[23] Veamos.

La Ley Núm. 100, *supra*, prohíbe todo tipo de actuación discriminatoria de un patrono en contra de un empleado por razón de su raza, edad, color, *sexo*, origen social o nacional, condición social, afiliación o ideas políticas y religión. S.L.G. Hernández-Beltrán v. TOLIC, 151 D.P.R. 754, 772 (2000); Soto v. Hotel Caribe Hilton, 137 D.P.R. 294, 303 (1994); Alberto Acevedo Colom, Legislación Protectora del Trabajo Comentada, San Juan, Ed. Ramallo Printing Bros., 2001, pág. 194; 29 L.P.R.A. sec. 146. Particularmente, el Art. 1 de la referida disposición legal articula, en lo pertinente, que

> [t]odo patrono que despida, suspenda o discrimine contra un empleado suyo en relación a su sueldo, salario, jornal o compensación,

---

[23] Aunque el discrimen por razón de sexo engloba dos modalidades -(1) discrimen por el género de la persona o (2) discrimen por hostigamiento sexual- nuestro análisis se enfocará en el discrimen por motivo del género del individuo. Véase R. Delgado Zayas, Apuntes para el estudio de la Legislación Protectora del Trabajo En el Derecho Laboral Puertorriqueño, San Juan, Ramallo Bros. Printing, Inc., 2007, pág. 184.

términos, categorías, condiciones o privilegios de su trabajo, o que deje de emplear o rehúse emplear o reemplear a una persona, o limite o clasifique sus empleados en cualquier forma que tienda a privar a una persona de oportunidades de empleo o que afecten su status de empleado, por razón de edad,... raza, color, *sexo*, origen social o nacional, condición social, afiliación política, o ideas políticas o religiosas, o por ser víctima o ser percibida como víctima de violencia doméstica, agresión sexual o acecho del empleado o solicitante de empleo:

(a) Incurrirá en responsabilidad civil:

(1) Por una suma igual al doble del importe de los daños que el acto haya causado al empleado o solicitante de empleo;
(2) o por una suma no menor de quinientos dólares ($500) ni mayor de dos mil dólares ($2,000), a discreción del tribunal, si no se pudieren determinar daños pecuniarios;
(3) o el doble de la cantidad de los daños ocasionados si ésta fuere inferior a la suma de quinientos dólares ($500), y [sic];

(b) incurrirá, además, en un delito menos grave y, convicto que fuere, será castigado con multa de hasta cinco mil dólares ($5,000), o cárcel por un término no mayor de noventa (90) días, o ambas penas, a discreción del tribunal.
...
El tribunal en la sentencia que dicte en acciones civiles interpuestas bajo las precedentes disposiciones podrá ordenar al patrono que reponga en su empleo al trabajador y que cese y desista del acto de que se trate. (Énfasis nuestro). 29 L.P.R.A. sec. 146.

Al igual que la Ley Núm. 3, *supra*, el Art. 3 de la Ley Núm. 100, *supra*, establece una presunción rebatible de que el despido de un empleado por causa de los motivos reseñados es discriminatorio, salvo que el patrono demuestre la existencia de justa causa para tal determinación. 29 L.P.R.A. sec. 148; S.L.G. Hernandez-Beltrán v. TOLIC, supra, pág. 774; Alberty v. Bco. Gub. De Fomento, 149 D.P.R. 655, 663 (1999); Soto v. Hotel Caribe

Hilton, supra, pág. 303; A. Acevedo Colom, *op. cit.*, pág. 200.[24] Esta presunción se activa en la vista evidenciaria del caso una vez el empleado establezca un caso *prima facie* de discrimen según la Ley Núm. 100, *supra*, y no antes.    S.L.G. Hernández-Beltrán v. TOLIC, supra, pág. 774.

En el pasado nos hemos expresado sobre el esquema probatorio aplicable al momento de asignar turnos o pesos de prueba en toda reclamación al amparo de la Ley Núm.

---

[24] No obstante, hemos expresado que entre ambas disposiciones existe cierta diferencia relativa al ámbito de protección que ambas proveen. Esto se debe a que

[m]ediante la Ley Núm. 3, *supra*, se proveyó a la mujer obrera embarazada una protección mayor que la que le ofrece la Ley Núm. 100, *supra*. En una acción entablada bajo la Ley Núm. 3, *supra*, el patrono responde en daños si despide, sin justa causa, a una mujer embarazada. De otra parte, una reclamación bajo la Ley Núm. 100, *supra*, podría no proceder si, a pesar de no existir justa causa para el despido, el patrono prueba que éste no fue discriminatorio. Rivera Águila v. K-Mart de P.R., supra, págs. 609-610, citando a, Ibáñez v. Molinos de P.R., Inc., 114 D.P.R. 42, 53 (1983); Odriozola v. S. Cosmetic Dist. Corp., 116 D.P.R. 485, 502-503 (1985).

100, *supra*.[25]   <u>Díaz v. Wyndham Hotel Corp.</u>, supra, pág.

382; <u>S.L.G. Hernández-Beltrán v. TOLIC</u>, supra, pág. 775-

776; <u>Ibáñez v. Molinos de Puerto Rico</u>, 114 D.P.R. 42, 50-

54 (1983).  Así, esta Curia ha dispuesto que:

> [e]l peso de la prueba para establecer las bases
> de su reclamación le... [corresponde]
> inicialmente al empleado.  Éste tiene que
> comenzar presentando prueba que demuestre,
> primero, que hubo un despido o acto perjudicial;
> segundo, que éste se realizó sin justa causa; y
> tercero algún hecho base que lo ubique dentro de
> la modalidad de discrimen bajo la cual reclama.
> Una vez el empleado cumple con esta primera fase
> surge la presunción de discrimen del Art. 3 [de
> la Ley Núm. 100, *supra*].  Es decir, el empleado
> no tiene que probar el acto discriminatorio que
> es objeto de la presunción.
>
> El peso de la prueba cambia, el *onus probandi*
> recae entonces sobre el patrono.  Si el patrono
> no presenta prueba alguna en esta etapa se
> considera que el empleado ha probado su caso de
> discrimen restando sólo la presentación de la
> prueba        sobre        los        daños.
>
> De otra parte, si el patrono decide defenderse,
> tiene varias alternativas.  Éste puede presentar
> prueba que rebata la presunción de discrimen
> activada por el empleado; o puede optar por
> presentar prueba de que el despido fue
> justificado; o que no hubo tal despido; o que a
> pesar de haber habido un despido injustificado
> éste        no        fue        discriminatorio.
>
> Una vez el patrono presenta su prueba rebatiendo
> la presunción de discrimen del Art. 3, el
> empleado todavía tiene otra oportunidad.  Puede
> presentar evidencia para probar su caso, o sea
> probar        que        realmente        hubo        un        despido

---

[25]   En <u>Díaz v. Wyndham Hotel Corp.</u>, 155 D.P.R. 364, 384 (2001), aclaramos que el Art. 3 de la Ley Núm. 100, *supra*, no "'altera en su totalidad el esquema probatorio que prevalece en nuestra jurisdicción, donde una vez presentada la demanda, le corresponde a la parte demandante en la vista en su fondo *comenzar* con la presentación de la prueba de sus alegaciones, *antes de que la parte demandada venga obligada a rebatirla*'".  (Énfasis en el original). (Citaciones internas omitidas).  La presunción establecida en el Art. 3 de la Ley Núm. 100, *supra*, sólo busca "facilitarle al empleado demandante el probar su reclamación, no relevarle de la necesidad y obligación de presentar evidencia para probar sus alegaciones".  Íd.  Véase, también, <u>S.L.G. Hernández-Beltrán v. TOLIC</u>, 151 D.P.R. 754 (2000).

discriminatorio, pero esta vez lo tendrá que hacer sin el beneficio de la presunción. Tendrá que presentar evidencia de incidentes o hechos que prueben dicho discrimen o de los cuales se pueda inferir la alegada actuación discriminatoria. Éste es el esquema probatorio establecido por el Art. 3. Sus efectos son con respecto a la presentación de la prueba en la vista en su fondo que se celebre en instancia, no con relación a la mera presentación de las alegaciones. (Citaciones internas omitidas). S.L.G. Hernández-Beltrán v. TOLIC, supra, págs. 775-776.

En Díaz v. Wyndham Hotel Corp., supra, pág. 387, añadimos que la presunción de discrimen estatuida en el Art. 3 de la Ley Núm. 100, *supra*, "incluye todas las modalidades proscritas" al amparo de ésta. Sin embargo, "no todas las modalidades de discrimen se configuran por la existencia de unos mismos hechos básicos; todas y cada una de las referidas requieren la existencia de distintos hechos base, *i.e.* una reclamación por discrimen por edad se configura de manera distinta a una por discrimen por sexo". Íd.

Además, en dicho caso modificamos el proceso evidenciario antes descrito cuando el demandante reclamaba al amparo de la Ley Núm. 80, *supra*, a la vez que instaba una causa de acción según los postulados de la Ley Núm. 100, *supra*. Así, establecimos que "*el empleado demandante, que reclama la protección de ambos estatutos, tiene el deber de alegar en su demanda la ausencia de justa causa, y luego, durante el primer turno de prueba, probar ciertos elementos básicos de su reclamación por*

*discrimen para que quede activada la presunción dispuesta por ley*". (Énfasis en el original). Íd., pág. 388.

En resumen, en toda causa de acción instada simultáneamente al amparo de la Ley Núm. 80, *supra*, y la Ley Núm. 100, *supra*, el empleado, antes de articular su caso *prima facie* por la modalidad de discrimen que arguya, deberá *alegar* en su demanda que su despido fue injustificado. Una vez alegue lo anterior, debe proceder a establecer su caso *prima facie* por discrimen: entiéndase, (1) que fue despedido, (2) sin justa causa y (3) que está ubicado dentro de la modalidad de discrimen bajo la cual reclama. Íd., pág. 389. Luego del empleado establecer su caso *prima facie* por discrimen, el patrono puede atacar la presunción activada de tres maneras, a saber: (1) derrotar el hecho básico -la ausencia de justa causa-, (2) destruir el hecho presumido -que el despido fue por causa de motivos discriminatorios-, o (3) destruir el hecho básico y el presumido, a la vez. Íd., pág. 390. Finalmente, si el patrono lograr derrotar la presunción de discrimen según las alternativas reseñadas, entonces el empleado deberá presentar prueba dirigida a establecer la existencia del discrimen, sin contar con el beneficio de la presunción. Íd.

Por otro lado, la Ley Núm. 69, *supra* -al igual que la Ley Núm. 100, *supra*- prohíbe el discrimen por razón de sexo. Dicha legislación fue promulgada con el fin de "garantizar la igualdad de derecho al empleo tanto del

hombre como de la mujer, prohibiendo las actuaciones que promueven el discrimen, fijando responsabilidades e imponiendo penalidades". 29 L.P.R.A. sec. 1321; Ramírez Ferrer v. Conagra Foods Puerto Rico, 2009 T.S.P.R. 55, 175 D.P.R. ___. Como resultado, el Art. 3 de la Ley Núm. 69, supra, establece como práctica ilegal del empleo el que un patrono "suspenda, rehúse emplear, o despida" a cualquier empleado por razón de su sexo. 29 L.P.R.A. sec. 1323(1). En su Art. 2, el estatuto bajo análisis define la frase por razón de su sexo de manera que "[i]ncluy[a], pero no se limit[e],... a... embarazo, parto, o condiciones médicas relacionadas". (Énfasis nuestro). 29 L.P.R.A. sec. 1322. Además, la Ley Núm. 69, supra, articula expresamente que "[s]erá una práctica ilegal de empleo [toda] política o práctica escrita o verbal en que un patrono excluya del empleo a... empleados por razón de embarazo, parto o condiciones médicas relacionadas". 29 L.P.R.A. sec. 1334(a). Si un patrono infringe las prohibiciones legales esbozadas, se expone a las siguientes penalidades civiles y criminales:

(a) Incurrirá en responsabilidad civil:

(1) Por una suma igual al doble del importe de los daños que el acto haya causado al empleado o solicitante de empleo;

(2) o por una suma no menor de cien dólares ($100) ni mayor de mil dólares ($1,000), a discreción del tribunal, si no se pudieren determinar daños pecuniarios;

(3) el doble de la cantidad de los daños ocasionados si ésta fuere inferior a la suma de cien dólares ($100), y [sic]

(b) incurrirá, además, en un delito menos grave y, convicto que fuere, será castigado con multa no menor de cien dólares ($100) ni mayor de quinientos dólares ($500), o cárcel por un término no menor de treinta (30) días ni mayor de noventa (90) días, o ambas penas, a discreción del tribunal.

El tribunal en la sentencia que dicte en acciones civiles interpuestas bajo las precedentes disposiciones podrá ordenar al patrono que reponga en su empleo al empleado y que cese y desista del acto de que se trate. 29 L.P.R.A. sec. 1341.

Por último, amerita indicar que las disposiciones de la Ley Núm. 69, *supra*, prevalecen sobre aquellas provistas en la Ley Núm. 100, *supra,* respecto a la prohibición del discrimen por razón de sexo en el ámbito laboral. Rivera Briceño v. Juan Rodríguez, 129 D.P.R. 669, 676-677 (1991). Véase, también, A. Acevedo Colom, *op. cit.,* pág. 208.

III.

De entrada anticipamos que, ante la ausencia de indicio alguno de que el Tribunal de Primera Instancia incurrió en *manifiesto error, prejuicio, parcialidad o pasión* al apreciar la evidencia desfilada en el juicio, no intervendremos con la evaluación de la prueba realizada por el foro primario. Véanse: Soc. de Gananciales v. Centro Grafico, supra, pág. 962; Quintana Tirado v. Longoria, 112 D.P.R. 276 (1982); Rodríguez Cancel v. A.E.E., 116 D.P.R. 443 (1985); Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8 (1987). Consecuentemente, le otorgamos deferencia a las determinaciones de hecho consignadas por el juzgador del foro sentenciador y

pasamos a resolver las controversias inicialmente esbozadas a la luz de éstas.

*A. La existencia de un contrato bona fide de empleo temporero*

Como bien expusimos en nuestra discusión del Derecho, un contrato laboral puede proveer empleo por término indeterminado o por un término cierto o temporero. Cuando el *término de empleo es indeterminado*, el patrono está obligado por la Ley Núm. 80, *supra.* Debido a ello, si el patrono despide a su empleado sin justa causa, vendrá obligado a compensarle con la indemnización mínima dispuesta por el Art. 1 del mencionado estatuto: la mesada.

Por otro lado, cuando el contrato dispone para un *término fijo* de empleo, el despido de un empleado estará regulado por una de dos formas. Primero, si el obrero ejerce funciones que requieran destrezas manuales compatibles con las labores esbozadas en el Art. 1476 del Código Civil, *supra*, el patrono sólo quedará sujeto por la Ley Núm. 80, *supra*, si opta por despedir a su empleado, sin justa causa, *antes de vencer el término de empleo fijado en el contrato laboral.* Si el empleado fue despedido *luego de vencer el término de empleo pactado en el contrato laboral*, entonces la Ley Núm. 80, *supra*, no será de aplicación. Segundo, si el obrero no ejerce una labor que sea compatible con los oficios dispuestos en el Art. 1476 del Código Civil, *supra*, entonces el despido del

empleado se regirá por los principios generales de nuestro derecho de obligaciones y contratos. Por consiguiente, será necesario analizar el contrato pactado por las partes para determinar los derechos que le corresponden al empleado despedido. A este análisis deberá añadírsele –en aquello que no sea incompatible- las protecciones dispuestas por nuestra legislación protectora del trabajo, especialmente los Arts. 1 y 11 de la Ley Núm. 80, *supra*.

Al añadir a nuestro análisis los artículos indicados, encontramos que el Art. 1 de la Ley Núm. 80, *supra*, establece una presunción rebatible de que todo despido o negativa de renovación de contrato de un empleado contratado por término u obra cierta será injustificado y sujeto a las protecciones provistas por la Ley Núm. 80, *supra*, a no ser que: (1) la práctica y circunstancias involucradas u otra evidencia en el contrato indiquen, de forma objetiva, que el patrono no creó en el empleado una expectativa de continuidad de empleo, y (2) tal contrato resulta ser uno *bona fide*.

De acuerdo al Art. 11 de la Ley Núm. 80, *supra*, un contrato por término u obra cierta *bona fide* es aquel que: (1) se haya pactado por escrito; (2) durante el primer turno o jornada de trabajo del empleado; y (3) que se haga con el propósito –y así se haga constar- de (a) sustituir durante su ausencia a un empleado en el uso de licencia establecida por ley o por el patrono, (b) llevar a cabo *tareas extraordinarias o de duración cierta*, tales como lo

son -a modo de ejemplo- los inventarios anuales, la reparación de equipo, maquinaria o las facilidades de la empresa, el embarque o desembarque casual de carga y el trabajo en determinadas épocas del año como Navidad, o (c) para cumplir con las órdenes temporeras de *aumentos de producción y cualquier otro proyecto o actividad particular de corta duración o de duración cierta fija.* 29 L.P.R.A. sec. 185k(a). Si el patrono no prueba lo anterior, y despide al empleado sin justa causa, vendrá obligado a indemnizarlo con la mesada.

Al examinar los contratos laborales pactados entre 100% Natural y la señora López Fantauzzi,[26] encontramos que todos eran contratos de empleo temporero los cuales disponían de un *periodo fijo* de trabajo vencedero luego de 30 días. Como resultado, la peticionaria era una empleada contratada por *tiempo determinado*, lo cual implica la no aplicabilidad de la Ley Núm. 80, *supra,* cuyas disposiciones sólo vinculan al patrono cuando el contrato dispone de un periodo de trabajo *indeterminado*.

Igualmente, un análisis de las destrezas requeridas para las funciones que desempeñaba la señora López Fantauzzi como empleada de 100% Natural revela que éstas no eran compatibles con los oficios dispuestos en el Art. 1476 del Código Civil, *supra* -labradores, artesanos, etc.- ya que no exigían habilidades manuales. En consecuencia, los contratos laborales de la peticionaria no estaban

---

[26] Apéndice, Pet. de certiorari, págs. 151, 154 y 176.

cobijados por dicho articulado. Es por ello que tales pactos de empleo deben examinarse a la luz de los principios generales de nuestro derecho de obligaciones y contratos y conforme a las exigencias de los Arts. 1 y 11 de la Ley Núm. 80, *supra*.

Al considerar dichos contratos laborales a la luz de los postulados generales de nuestro derecho de obligaciones y contratos, encontramos que la señora López Fantauzzi y 100% Natural pactaron -en plena libertad de contratación- por términos determinados de empleo de 30 días y no más. Tales contratos no violaron la ley, la moral o el orden público y consecuentemente obligaron a las partes a lo que expresamente pactaron entre ellas, sin importar las consecuencias que podían derivarse de sus acuerdos, conforme a la buena fe, al uso y a la ley.

Igualmente, encontramos que el lenguaje y los términos utilizados en el contrato laboral resultan claros y no dejan lugar a dudas sobre la intención de las partes de contratar por términos cortos de empleo. Esta intención de contratar por términos fijos y determinados surge de las circunstancias coetáneas al contrato que fueron probadas en juicio. La prueba desfilada ante el Tribunal de Primera Instancia y creída por el juzgador de los hechos demostró que el nivel de ventas del establecimiento fluctuaba de temporada en temporada y que los contratos de arrendamiento suscritos entre la recurrida y la administración del Aguadilla Mall eran por

términos no renovables de 30 días dada la inestabilidad en la oferta y demanda del establecimiento. Así, pues, la recurrida sólo podía contratar con sus empleados por periodos de empleo que fueran iguales o menores al término de 30 días pactado en el contrato de arrendamiento reseñado, y que fueran cónsonos con la realidad económica del negocio. Además, no fue hasta abril de 2007 –casi un año luego del alegado despido de la peticionaria– que la señora Ortiz Ruperto pudo contratar con la administración del Aguadilla Mall por términos mayores de 30 días. Evidentemente, para la fecha en que ocurrieron los hechos en el caso ante nos, la recurrida no tenía otra opción que ofrecerle a sus empleados trabajo por periodos cortos y determinados iguales o menores de 30 días.

Por otro lado, aunque los contratos de empleo en el pleito que nos ocupa deben ser interpretados a la luz de los principios generales del derecho de obligaciones y contratos, debemos integrar a nuestro análisis aquello dispuesto por los Arts. 1 y 11 de la Ley Núm. 80, *supra*. Al proceder de tal manera, encontramos que la presunción de despido injustificado que el Art. 1 de dicha Ley establece jamás fue activada. Lo anterior se debe a dos razones fundamentales, a saber: (1) que del expediente surge que los contratos laborales constituían pactos *bona fides* -según tal término es definido por el Art. 11 de la Ley Núm. 80, *supra*- los cuales representan una excepción a dicha presunción; y (2) que tales contratos por tiempo

fijo *bona fides* no crearon en la peticionaria una expectativa de continuidad de empleo. Veamos.

Primeramente, los contratos laborales pactados con la señora López Fantauzzi eran *bona fides* debido a que: (1) fueron acordados por escrito; (2) en el primer turno de empleo de la peticionaria; y (3) con el fin expreso de realizar *tareas extraordinarias de corta duración, según el aumento en la producción del establecimiento*. Segundo, los contratos reseñados no crearon en la peticionaria una expectativa de continuidad de empleo más allá del término de 30 días que cada pacto establecía. Lo anterior se debe a que la señora López Fantauzzi conocía —por causa del lenguaje expreso de los contratos, la inestabilidad en ventas que experimentaba el negocio y la relación contractual entre la recurrida y el Aguadilla Mall— que sus horas de trabajo estaban condicionadas al nivel de ventas y al aumento en producción del kiosco 100% Natural. Ante tales circunstancias, la peticionaria sólo albergaba una expectativa de continuidad de trabajo durante el término de 30 días consignado en su pacto laboral. Debido a que los contratos de empleo de la peticionaria fueron honrados por la recurrida hasta el final de los 30 días pactados, y a la luz de la práctica y circunstancias involucradas en el proceso de contratación, podemos concluir que 100% Natural no creó en la Señora López Fantauzzi una expectativa de continuidad de empleo.

Por entender que los contratos pactados con la peticionaria eran de término cierto *bona fide* y por concebir que la señora López Fantauzzi no albergaba una expectativa de continuidad de empleo, resolvemos que la presunción de despido injustificado impuesta por el Art. 1 de la Ley Núm. 80, *supra*, nunca fue activada. Consecuentemente, el despido de la peticionaria fue uno justificado a la luz de los términos y las condiciones pactadas por las partes.

*B. La causa de acción por discrimen por razón de embarazo*

En el caso que nos ocupa, la peticionaria alega que, al no renovársele el contrato laboral, fue discriminada por la recurrida por razón de su embarazo, según lo proscribe la Ley Núm. 100, *supra*, la Ley Núm. 69, *supra*, y la Ley Núm. 3, *supra*. No le asiste la razón.

En nuestra exposición del Derecho dispusimos que, cuando un empleado insta una causa de acción por discrimen por razón de sexo al amparo de la Ley Núm. 100, *supra,* y la Ley Núm. 69, *supra*, surge una presunción de discrimen contra el patrono una vez el empleado establezca en la vista probatoria un caso *prima facie* por la modalidad de discrimen alegada. Según nuestros pronunciamientos jurisprudenciales, un empleado establece un caso *prima facie* de discrimen contra su patrono cuando demuestra en la vista evidenciaria: (1) que hubo un despido o acto perjudicial, (2) que se realizó sin justa causa, y (3) que se cometió algún hecho base cónsono con la modalidad de

discrimen alegada. Una vez tal presunción es activada, el patrono puede rebatirla probando que: (1) hubo justa causa para el despido, o (2) que el despido fue por causa de motivos no-discriminatorios, o (3) articulando ambas defensas a la vez. De rebatir la presunción, el empleado podrá presentar prueba demostrativa de la existencia del discrimen alegado, pero sin el beneficio de la presunción indicada.

Por otro lado, como bien reseñamos anteriormente, la Ley Núm. 3, *supra*, protege a toda madre obrera al prohibir el discrimen por razón de embarazo, el cual representa una modalidad del discrimen por razón de sexo. Al analizar la Ley Núm. 3, *supra*, establecimos que una vez una empleada embarazada es despedida de su empleo durante su estado de gestación, tal hecho base, de por sí, configura una presunción de despido discriminatorio por razón de embarazo. Para rebatir dicha presunción, el patrono viene obligado a demostrar que hubo justa causa para la acción adversa tomada en contra de la empleada en condición de preñez. Igualmente, según dispusimos en Santiago v. Oriental Bank & Trust, supra, el patrono también puede levantar como defensa afirmativa el hecho de que desconocía del embarazo de la empleada al momento del despido.

Según surge del expediente, la peticionaria no estableció un caso *prima facie* por discrimen por razón de embarazo. En primer lugar, aunque la peticionaria alegó

que hubo un despido o acto perjudicial en su contra al no renovársele su contrato laboral –primer requisito de un caso *prima facie* por discrimen– ésta falló en probar que tal acción se realizó sin justa causa.

Al examinar el expediente del caso ante nos, encontramos que la no renovación del contrato de la peticionaria fue por razones justificadas, ya que, como bien expusimos antes, su contrato de empleo temporero era uno *bona fide* el cual fue honrado por la recurrida hasta el final del término de 30 días pactado en éste. Debido a que no es de aplicación la Ley Núm. 80, *supra*, y por causa de no haberse activado la presunción de despido injustificado del Art. 1 del referido estatuto, el patrono sólo estaba atado por los términos del contrato a la hora de negarse a renovar el mismo. Por consiguiente, 100% Natural sólo venía obligada a garantizar el empleo de la peticionaria por el término temporero de 30 días, y no más.

A la par, la no renovación del contrato de la señora López Fantauzzi el 19 de marzo de 2006 se debió a razones imputables a la peticionaria y no a la recurrida. El 20 de marzo de 2006, cuando la señora Ortíz Ruperto le ofreció a la peticionaria un nuevo contrato por menos horas y un menor salario -situación que se fundamentaba en la merma de los ingresos del negocio por concepto de ventas- la peticionaria rechazó tal oferta y la catalogó incorrectamente como un despido. Relativo al contrato de

empleo temporero pactado el 15 de julio de 2006 -el cual no fue renovado luego de vencer el término de 30 días acordado- la propia peticionaria reconoció ante el Negociado de Seguridad de Empleo del Departamento del Trabajo y Recursos Humanos que dicho pacto laboral no sería continuado por motivo de la merma en producción y ventas que atravesaba la recurrida. Ante tales hechos, la peticionaria falló en establecer que la no renovación de su contrato fue sin justa causa -segundo requisito de un caso *prima facie* por discrimen-.

En segundo lugar, aunque el mero despido de la peticionaria mientras estaba embarazada representó el hecho base que activó la presunción de discrimen por la modalidad de embarazo, según establecida por la Ley Núm. 3, *supra* -tercer requisito de un caso *prima facie* por discrimen al amparo de la Ley Núm. 100, *supra*, o 69, *supra*- el patrono rebatió la misma al demostrar que existió justa causa para el despido y que *desconocía de la condición de embarazo de la señora López Fantauzzi*. A pesar de que la peticionaria argumentó que le notificó a la señora Ortiz Ruperto sobre su condición de gestación antes de ser despedida, el Tribunal de Primera Instancia no le confirió credibilidad a tal alegación.

Finalmente, luego del foro primario otorgarle credibilidad al testimonio de la recurrida -el cual rebatió la presunción de despido por razón de embarazo instaurada por la Ley Núm. 3, *supra*- la peticionaria no

ofreció evidencia adicional que colocará al juzgador de los hechos en posición de concluir que, en efecto, hubo discrimen por razón de sexo según lo proscribe la Ley Núm. 100, *supra*, y la Ley Núm. 69, *supra*.

Por entender que la peticionaria no articuló un caso *prima facie* por discrimen por razón de embarazo, y concebir que el patrono rebatió las alegaciones de la peticionaria al demostrar que hubo justa causa para el despido y que desconocía del embarazo de la señora López Fantauzzi, resolvemos que no se configuró una causa de acción por discrimen por razón de sexo según lo dispone la Ley Núm. 3, *supra*, la Ley Núm. 100, *supra*, y la Ley Núm. 69, *supra*.

IV.

Debido a que la no-renovación del contrato de la peticionaria fue una acción justificada por nuestro ordenamiento laboral, y por ésta no establecer un caso *prima facie* de discrimen por razón de embarazo, *confirmamos el dictamen del Tribunal de Apelaciones sin especial designación de costas, intereses, u honorarios de abogado.*

Se dictará sentencia de conformidad.

Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Certiorari

Johanna López Fantauzzi,
et. al.
Peticionarios

v.

CC-2009-0692

100% Natural, et al.
Recurridos

SENTENCIA

San Juan, Puerto Rico, a 16 de marzo de 2011.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se confirma la sentencia dictada por el Tribunal de Apelaciones en el caso de autos.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton disiente con la siguiente expresión:

El Juez Presidente señor Hernández Denton disiente de la Opinión del Tribunal por las razones expuestas previamente en sus Opiniones Disidentes de Meléndez Rivera v. Asoc. Hospital del Maestro, 156 D.P.R. 828 (2002), y Santiago González v. Oriental Bank and Trust, 157 D.P.R. 250 (2002). El Juez Presidente entiende que, en el presente caso, el patrono violó la Ley de Protección de Madres Obreras, Ley 3 de 13 de marzo de 1942, 29 L.P.R.A. sec. 467 et. seq., al reducirle el salario a una mujer embarazada y descenderla de puesto sin evidenciar una justa causa para ello.

La Jueza Asociada señora Fiol Matta disiente sin opinión escrita. La Juez Asociada señora Rodríguez Rodríguez disiente de la decisión mayoritaria en este caso con la siguiente expresión:

La Juez Asociada Rodríguez Rodríguez no expresa criterio en esta ocasión sobre si bajo la Ley de Madres Obreras, Ley Núm. 3 de 13 de marzo de 1942, 29 L.P.R.A. sec. 467 *et seq.*, el desconocimiento del embarazo de una empleada por parte del patrono al momento de despedirla lo libra de la responsabilidad a la que podría estar sujeto bajo dicha ley. Ello, no obstante, disiente de la Opinión del Tribunal por entender que, en este caso, no se cumplió con los postulados de la Ley de Indemnización por Despido Injustificado, Ley Núm. 80 de 30 de mayo de 1976, 29 L.P.R.A. secs. 185(a) *et seq.* La prueba presentada por el patrono demandado no logró establecer el carácter *bona fide* de los contratos de empleo a término fijo pactados con la demandante. Ante tal hecho, procedía aplicar la presunción de despido injustificado que provee la Ley Núm. 80, supra, y evaluar el caso de conformidad con la referida ley. Siendo de aplicación la fuerte presunción de despido injustificado de la Ley Núm. 80, *supra*, correspondía al patrono demandado presentar prueba sobre la justa causa. Finalmente, toda vez que el patrono no lo [sic] logró evidenciar el carácter justificado del despido, correspondía otorgarle a la empleada los remedios provistos por la Ley Núm. 80, *supra*.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo